1  PETER M. HART, Esq. (State Bar No. 198691)
   **LAW OFFICES OF PETER M. HART**
2  13952 Bora Bora Way, F-320
   Marina Del Rey, CA 90292
3  Telephone: (310) 478-5789
   Facsimile: (509) 561-6441
4  hartpeter@msn.com

5  ERIC HONIG (STATE BAR NO. 140765)
   **LAW OFFICE OF ERIC HONIG**
6  P.O. Box 10327
   Marina Del Rey, California 90295
7  Telephone: (310)314-2603
   Facsimile: (310)314-2793
8
   KENNETH H. YOON (State Bar No. 198443)
9  **LAW OFFICES OF KENNETH H. YOON**
   One Wilshire Blvd., Suite 2200
10 Los Angeles, CA 90017
   (213) 612-0988
11 (213) 947-1211 facsimile
   kyoon@yoon-law.com
12
   - Other Plaintiff's counsel listed on following page
13
   Attorneys for Plaintiff Nicole Villegas

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NICOLE VILLEGAS, as an individual and on behalf of all others similarly situated,<br><br>          Plaintiff,<br>     vs.<br><br>J.P. MORGAN CHASE & CO., a Delaware corporation; JPMORGAN CHASE BANK, N.A., a national association; CHASE BANK USA, N.A., a national association; and DOES 1 through 50, inclusive,<br><br>          Defendants. | Case No.:  CV 09-00261 SBA (EMC)<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION FOR AN ORDER COMPELLING FURTHER RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET NO. ONE AND FOR EVIDENTIARYAND PRECLUSIVE SANCTIONS**<br><br>**[CONCURRENTLY FILED DECLARATION OF PETER M. HART]**<br><br>DATE:      September 2, 2009<br>TIME:       10:30 a.m.<br>CRTRM:   C<br>JUDGE:    Magistrate Judge Edward M. Chen |

1  LARRY W. LEE
   **DIVERSITY LAW GROUP, A Professional Corporation**
2  444 S. Flower Street, Suite 1370
   Los Angeles, CA 90071
3  (213) 488 – 6555
   (213) 488 – 6554 facsimile
4  lwlee@diversitylaw.com

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

I.  INTRODUCTION ..................................................................................................1

II. LEGAL ANALYSIS ..............................................................................................4

III. ARGUMENT ........................................................................................................6

    A. Defendant J.P. Morgan Should Be Compelled To Produce Supplemental Responses And All Responsive Documents To Plaintiff's Document Requests Dealing With (1) Recording And Paying Wages And (2) Payment Of Final Wages. ...........................................6

    B. Defendant JP Morgan Should be Compelled to Produce Supplemental Responses And All Responsive Documents to Plaintiff's Requests Concerning Defendant JP Morgan's Policies Regarding Vacation and Other Paid Time Off.................................................10

    C. Defendant JP Morgan Should be Compelled to Produce Documents Containing the Contact Information Of Witnesses/Putative Class Members. ............................................................11

    D. Defendant JP Morgan Should Be Precluded From Using Or Relying On Documents It Failed To Identify And Describe In Its Initial Disclosures....13

IV. CONCLUSION ...................................................................................................15

# TABLE OF AUTHORITIES

**CASE LAW**

*Adams v. Inter-Con Sec. Sys.*, No. 06-5428 MHP, 2007 U.S. Dist. LEXIS 26881 ............ 12
    (N.D. Cal. 2007)

*Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554 (2007) ............ 12

*Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library Inc.*, 586 F.2d 962 ............ 7
    (2d Cir. 1978)

*Crab Addison, Inc. v. Superior Court*, 169 Cal. App. 4th 958 (2008) ............ 12

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) ............ 3, 12

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 2008 U.S. Dist. LEXIS 14756 ............ 6, 8, 9
    (N.D. Cal. Feb. 13, 2008)

*In Re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 505 F. Supp. ............ 1, 3, 8, 11
    2d 609 (N.D. Cal. 2007)

*Kamar v. Radio Shack Corp.*, 2008 WL 4552953 *10 (C.D. Cal. Oct. 8, 2008) ............ 5

*Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698 *9 (N.D. Cal. Aug. 30, 2007) ............ 5

*Lee v. Dynamex, Inc.*, 166 Cal. App. 4th 1325 (2008) ............ 12

*Lewis v. Wells Fargo & Co.*, 2009 U.S. Dist. LEXIS 36240 (N.D. Cal. 2009) ............ 9

*Morrison v Booth*, 730 F.2d 642 (11th Cir. 1984) ............ 8

*Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042 (N.D. Cal. 2004). ............ 14

*Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439 (N.D. Cal. 2008) ............ 5

*Pioneer Electronics v. Superior Court*, 40 Cal.4th 360 (2007) ............ 3, 12

*Planned Parenthood Golden Gate v. Superior Court*, 3 Cal. App. 4th 347 (2000) ............ 11

*Prentice v. Fund For Public Interest Res., Inc.*, 2007 U.S. Dist. LEXIS 71122 ............ 12
    (N.D. Cal. 2007)

*Puerto v. Superior Court*, 158 Cal. App. 4th 1242 (Cal. App. 2d Dist. 2008) ............ 12

*Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529 (S.D. Cal. 2008) ............ 7

*Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571, cert. denied, 459 U.S. 838, 74 ............ 7
    L. Ed. 2d 80, 103 S. Ct. 86 (1982)

## TABLE OF AUTHORITIES (cont'd)

**CASE LAW (cont'd)**

*Tennie v. City of New York Department of Social Services*, 1987 U.S. Dist. LEXIS 574 at *9 (S.D.N.Y. 1987) ......... 9

*Union Mut. Life Ins. Co. v. Superior Court*, 80 Cal. App. 3d 1 (1978) ......... 7

*Von Brimer v. Whirlpool Corporation*, 536 F.2d 838 (9th Cir. 1976) ......... 14

*Wren v. RGIS Inventory Services*, C-06-5778 JCS (N.D. Cal. Feb. 2, 2009) ......... 5

**STATUTES**

Fed. R. Civ. P. 26(a)(1)(A)(ii) ......... 14

Fed. R. Civ. P. 37(c)(1) ......... 4, 14

California Labor Code section 204 ......... 4

California Labor Code section 226 ......... 4

**LEGAL TREATISES**

Manual for Complex Litigation Fourth (Fed. Judicial Center 2004) ......... 6

7AA Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure*, Civil § 1785.3 (3d Ed. 2005) ......... 7

**DLSE OPINION LETTERS**

Opinion Letter dated 1986.10.28 ......... 6

Opinion Letter dated 1986.11.04 ......... 6

Opinion Letter dated 1987.01.14-1 ......... 6

Opinion Letter dated 1987.03.11 ......... 6

Opinion Letter dated 1990.09.24 ......... 6

Opinion Letter dated 1992.04.27 ......... 6

Opinion Letter dated 1993.04.19 ......... 4

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

### I. INTRODUCTION

Defendant J.P. Morgan Chase Bank, N.A. (hereafter "Defendant" or "JP Morgan") in its Opposition does not provide reasons why it should not have to produce <u>further verified supplemental responses</u> (which it has not done even after Plaintiff's motion to compel) and <u>all</u> responsive documents on (a) the policies, practices and procedures documents dealing with vacation issues, including personal days, floating holidays, and incidental time off ("vacation" documents) (RFP No. 14), (b) recording of time worked and inputting of time worked ("recording/paying time" documents) (RFPs Nos. 1, 2, 11-13, 24), and on (c) payment of final wages ("final pay" documents) (RFPs Nos. 8-10, 25). Further, Defendant has failed to proffer any reason or case law why documents with the contact information of putative class members should not be produced as case law is well-established that such information should be produced. Nor has Defendant offered any reason why they described such narrow Initial Disclosures in a putative class action setting and why JP Morgan should not be bound by these Initial Disclosures and held to them alone.[1]

In its Opposition, Defendant boldly makes it clear that it still has not produced all responsive documents regarding these vacation documents, recording/paying time, and final pay documents— Defendant states: "Defendant has already produced numerous responsive documents." This is the statement of a Defendant who cannot state simply: "All responsive documents have been produced." Indeed, Defendant argues that it does not need to produce these *all payroll* and *company policy and practice* documents. *Compare In Re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 505 F. Supp. 2d 609 (N.D. Cal. 2007) (ordering production of tens of thousands of documents on all policies, procedures and practices regarding vacation, personal time, and payment of final wages policies and practices, including Wal-Mart's entire payroll databases)) docket entries 91, 126, 136 and 162 produced as Exh. I to Hart Declaration in support of Plaintiff's Motion to Compel.)

---

[1] Indeed, part of JP Morgan's defense as to why it should not have to provide documents is that in California state court cases it has not needed to produce some of these documents. However, JP Morgan itself by its own choosing and under no compulsion removed this matter to this District Court and is now governed by the standards of discovery and initial disclosures in federal court. If Defendant wanted to invoke the disclosure and discovery standards of state court, they could have let this matter remain in the San Francisco County Superior Court where it was filed.

1        Indeed, Plaintiff in this discovery is not seeking tens of thousands of pages of timecards or of

2   personnel files of employees.  Plaintiff is seeking company employee <u>policy and practice documents</u>

3   regarding timekeeping, recording, and payment of wages and vacation policies as well.  Plaintiff is

4   seeking these documents for the full class period and a full and complete production of these

5   documents.  Defendant has not identified any factual why *these* policies and procedure documents

6   were not produced, why they would be burdensome or difficult to produce, why they would be

7   protected from production based on some privilege or other—nothing like this.  Indeed, to date

8   Defendants have produced a total of 251 pages of documents only.

9        Indeed, in its Opposition, Defendant makes clear that it does not even believe that Defendant

10  needed to provide complete and full Responses—or needs to provide complete Supplemental

11  Responses, which JP Morgan has never produced—clearly stating: (a) whether the documents that

12  were produced were of the documents on these topics, (b) whether these are just policies that applied

13  to Plaintiff, (c) whether these are documents that governed the whole class period were produced

14  going back 4 years from the filing of the complaint or not.

15       For example, in-person meet and confer session at Defendants' offices on August 4, 2009,

16  Defendant's counsel confirmed that with respect to vacation policies, not all documents were produced

17  and not all for the full class period going back four years was produced at all.  Plaintiffs' counsels

18  were simply told the other vacation policies are the "same."  These "same" documents for the full

19  class period were not produced supplementally.[2]  *See* Declaration of Peter M. Hart in Support of Reply

20  Memorandum, P 4)

---

[2]   Defendant claims in its Opposition to have no liability for forfeiture of vested vacation. First this is not the test for responses to discovery requests to say "we have no liability so we are not going to produce all relevant documents that exist." Further, this is completely contrary to the facts as set forth in Defendants' produced policies (let alone in what it has chosen to withhold) as set forth below. Further, the claims for late payment of final wages made by Plaintiff and of failure to comply with Labor Code Sections 204 and 226 regarding payment of wages are based on the very uniform paystub/wage payment policies and practices of Defendant which "catch up" wages such as overtime, holiday, pay, regular pay up to 4 weeks after such time was worked such that ideally certifiable class-wide liability on these claims is warranted based on Defendants' own documents and practices, including late payment of wages at the end of employment as set forth below.

- 2 -
PLAINTIFF'S REPLY MEMORANDUM ISO OF MOTION TO COMPEL FURTHER
RESPONSES AND RESPONSIVE DOCUMENTS (CV 09-00261 SBA (EMC))

1   Finally, with respect to the names, addresses and phone numbers documents that Plaintiff
2   seeks, Defendants still have not produced this information and in their Opposition, Defendant cites
3   two cases that are factually distinguishable. Further, Defendant ignores the case law that Plaintiff has
4   cited showing that such production of such contact information is well-established at this point. *See*
5   *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (stating that District Correct was
6   correct "to permit discovery of the names and addresses of the discharged employees."); *see also*
7   *Pioneer Electronics v. Superior Court*, 40 Cal.4th 360 (2007) (California Supreme Court holding such
8   information properly disclosed).

9   Importantly, Defendant in its Opposition does not argue that such production would be unduly
10  burdensome or burdensome at all to produce. Similarly and equally important, Defendant in its
11  Opposition does not argue or claim that it does not have such documents with class member contact
12  information. Plaintiff, on the other hand, needs such contact information for <u>pure</u> class certification
13  issues—as one element of evidence to show commonality and typicality. This information, which can
14  lead to Declarations used by Plaintiff to support her motion for class is a critical piece of information
15  that is vital to Plaintiff in this case and Defendant proffers to case law or reasons why this information
16  should not be produced.

17  Case law is well-established that such policies and procedures documents should be produced.
18  There is simply no burden to Defendant producing all its policies and procedures regarding time
19  worked, entering of time worked by employees, how Defendants' record and pay time and record time
20  worked, how Defendants capture what time is worked and pay it out, including recording and
21  capturing overtime hours worked, time off days taken, and when they pay overtime hours that are
22  worked and such time off days. These are documents that should be produced along with verified
23  supplemental responses. *See e.g. In Re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069,
24  505 F. Supp. 2d 609 (N.D. Cal. 2007), docket entries 91, 126, 136 and 162 produced as Ex. I to the
25  Hart Decl

26  Similarly, with respect to polices regarding payment of final wages and all vacation policies
27  documents for the full class period, these documents should be produced. *See id.*

28

1       Finally, Plaintiff filed a putative class action. Defendant in its Initial Disclosures only
2 described certain categories of documents only relating to Plaintiff. Defendant did not present any
3 valid reasons in its Opposition why it should not be precluded from using and relying on documents it
4 did not describe. Defendant is a major national banking corporation and has retained experienced
5 counsel from a major national law firm. Defendant knew the requirements of Initial Disclosures in the
6 federal courts and the burden of carefully describing all the documents that a defendant would need to
7 rely on or intended to rely on. Defendant JP Morgan chose to describe only a limited set of documents
8 and should not be able to now avoid the limitations that come with this. Indeed, JP Morgan
9 intentionally chose to draft and serve just these Initial Disclosures that they did—and they should be
10 willing and happy to have to abide by this clearly made choice and tactic. A party who fails to make
11 the required initial disclosure "is not allowed to use that information or witness to supply evidence on
12 a motion, at a hearing, or at trial, except where the failure to comply was "substantially justified" or
13 "harmless." Fed. R. Civ. P. 37(c)(1).

## II. DEFENDANT JP MORGAN'S VACATION AND PAYROLL POLICIES VIOLATE CALIFORNIA LAW

16       Defendant JP Morgan in violation of California law "catches up" pay of employees as much as
17 4 weeks after this pay is earned and due payable. *See* California Labor Code section 204 & 226. This
18 is an admitted payroll policy of Defendant as set forth in Plaintiff's paystubs/wage statements. *See*
19 Hart Decl. in Support of Reply, Exhibit "A" (Plaintiff's wage statements/paystubs). California Labor
20 Code section 204 requires the payment of wages within 10 days following the end of the pay-period
21 (when wages are paid semi-monthly) and no later than the next following pay period pay day for
22 overtime. *See also* Division of Labor Standards Enforcement Opinion Letter dated April 19, 1993.
23 Defendant's practice is to pay much later and this is clearly evidenced by Plaintiff's own wage
24 statements—which would be simply evidence of the general payroll practices of Defendant, Ms.
25 Villegas would be paid like every other employee, and not specially.
26       Plaintiff alleges that as a uniform payroll practice, she was regularly paid two or more pay
27 periods after she performed the work. For example, in her paycheck dated July 31, 2008 for the
28 payperiod starting July 16 and ending July 31, Ms. Villegas was paid for double-time from June 16 to

1  June 30.  *See* Hart Decl. in Support of Reply, Exhibit "A" (Plaintiff's wage statements/paystubs).
2  California Labor Code section 204 provides that employees are to be paid no later than the next
3  following payperiod for items like overtime or double-time – not two payperiods later.  See Cal. Labor
4  Code §204 ("wages earned for labor in excess of the normal work period shall be paid no later than the
5  payday for the next regular payroll period.")  Ms. Villegas suffered these late payments regularly, as
6  described on her paystubs, and believes that this payroll practice of illegal late payments of wages was
7  and continues to be an unlawful, systematic, uniform, class-wide payroll practice.  Plaintiff believes
8  this is a clear unlawful practice that requires discovery towards certification.  *See e.g., Otsuka v. Polo
9  Ralph Lauren Corp.*, 251 F.R.D. 439 (N.D. Cal. 2008) (District Court certified a wage and hour class
10 action based on standardized policies and procedures--a single employee handbook for all California
11 stores); *Wren v. RGIS Inventory Services*, C-06-5778 JCS (N.D. Cal. Feb. 2, 2009) (class certification
12 appropriate where uniform policy and practices are dictated by corporate headquarters); *Kamar v.
13 Radio Shack Corp.*, 2008 WL 4552953 *10 (C.D. Cal. Oct. 8, 2008) (where the employer has a
14 uniform policy uniformly applied the appropriateness of class certification is "easily established");
15 *Kurihara v. Best Buy Co., Inc.*, 2007 WL 2501698 *9 (N.D. Cal. Aug. 30, 2007) (granting certification
16 where defendant had a policy of improper security checks of its employees).

17 Such 4-week late catching up of wages improperly also provides clear evidence that at the end
18 of employment not all wages are paid—some still needs to be accounted for (as much as 4 weeks
19 back) and is paid out late to terminated employees, if ever at all.  This is precisely what Plaintiff
20 Villegas suffered.

21 Indeed, a Defendant like JP Morgan can well understand why catching up employees wages
22 later—in other words improperly holding on to employees wages beyond their right to do so—benefits
23 them: it allows JP Morgan to essentially keep wages in the wages of their employees in JP Morgan's
24 bank account earning interest rather than in the employees hands and their banks earning interest for
25 the employees, and this is an ideal damage and an ideal benefit to JP Morgan.

26 Defendant JP Morgan also disputes owing vacation wages or forfeiting them.  This is simply
27 not true.  Defendant's policies lead to a classic forfeiture of vested vacation wages, including personal
28 time, floating holiday time and incidental time off.  *See* Division of Labor Standards Enforcement

("DLSE") Manual § 15.1.12 ("the DLSE has always opined that leave time which is provided <u>without condition</u> is presumed to be vacation no matter what name is given to the leave by the employer"); *see also* DLSE Opinion Letters March 11, 1987 and September 24, 1990.  However, Plaintiff contends that JP Morgan's own corporate vacation policies and practices, as applied uniformly, caused a forfeiture.

For example, Plaintiff under Defendant's incidental time off ("ITO") benefits, Plaintiff earned such ITO off because she completed 90 days, never used any of her 2 days (16 hours) and was not paid any portion of her ITO days at the end of employment.  Similarly, with respect to Personal Days, Plaintiff earned at least 8 hours because she completed 90 days, never used any of her 8 Personal Day hours and was never paid any portion of her Personal Days at the end of her employment.  These days are the functional equivalent of vacation, as they can be used for any purpose without condition, and thus like vacation, they must be paid out on termination per Labor Code section 227.3.  *See also* DLSE Opinion Letters dated 1992.04.27, 1986.10.28, 1986.11.04 and 1987.01.14-1.  These are claims ideal for certification.  *See In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 2008 U.S. Dist. LEXIS 14756 (N.D. Cal. Feb. 13, 2008).

### III.    ARGUMENT

**A.    Defendant J.P. Morgan Should Be Compelled To Produce Supplemental Responses And *<u>All</u>* Responsive Documents To Plaintiff's Document Requests Dealing With (1) Recording And Paying Wages And (2) Payment Of Final Wages.**

Plaintiff seeks certain documents regarding the payment of final wages to all employees upon the termination of employment.  (Hart Decl., Exh. C, Request Response Nos. 8-10, 25).  Plaintiff also seeks documents regarding Defendant's policies regarding recording of hours worked of its employees and regarding the payment of wages and the timing of payment of wages to its employees.  (Hart Decl., Exh. C, Request Response Nos. 1, 2, 11-13, 24).

Defendant admits that it still has not produced all responsive documents regarding these vacation documents, recording/paying time, and final pay documents—and Defendant argues that it does not need to produce these *payroll* and *company policy and practice* documents.  Plaintiff is not seeking tens of thousands of pages of timecards or of personnel files of employees.  Plaintiff is seeking

company employee policy documents and company timekeeping, recording, and payment of wages documents. Plaintiff is seeking these documents for the full class period. Defendant has not identified any reason why *these* policies and procedure documents were not produced and should not be compelled. Defendant also contends that it does not need to provide supplemental responses describing what it has produced (and whether it is for the class period or not), identifying if they are all the documents and what are being withheld, if any.

Defendant in its Opposition presented no arguments based on true facts why it would be burdensome or too difficult or too costly to produce these policy and procedure documents on vacation, recording of hours and payment of wages, including payment of final wages. Defendant in its Opposition did not argue that it does not have these documents either. Defendant has not argued that such documents should not be produced for relevance reasons. Defendants just don't want to produce these documents—because, essentially, they don't want to and don't believe that Plaintiff is entitled to them.

This is contrary to established case law. This is contrary to the types of discovery on policies and procedures—let alone other documents—that is allowed in putative class actions by this Court. The right to conduct pre-certification discovery has been well established for many years. *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529 (S.D. Cal. 2008) (holding that "the minimal [class discovery] information Plaintiff requests is indeed contemplated under the Federal Rules of Civil Procedure … as basic to the discovery process."); *see also Union Mut. Life Ins. Co. v. Superior Court*, 80 Cal. App. 3d 1 (1978). Indeed, in the overwhelming majority of cases, class certification is resolved only after an appropriate period of discovery. 7AA Charles Alan Wright, Arthur R. Miller, & Mary K. Kane, *Federal Practice and Procedure*, Civil § 1785.3 (3d Ed. 2005).

To rule on an application for class certification, a court must ensure that an adequate factual basis exists for a full evaluation of each of the four criteria set out in Rule 23 of the Federal Rules of Civil Procedure: numerosity, typicality, commonality of question, and adequacy of representation. *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571, cert. denied, 459 U.S. 838, 74 L. Ed. 2d 80, 103 S. Ct. 86 (1982); *Chateau de Ville Prods., Inc. v. Tams-Witmark Music Library Inc.*, 586 F.2d 962, 966 (2d Cir. 1978). Indeed, it has been held to be reversible error for a district court to deny certification

1  without affording an appropriate opportunity for the plaintiff to conduct discovery to prove the
2  prerequisites for class certification are met by the case. *Morrison v Booth*, 730 F.2d 642 (11th Cir.
3  1984).

4  For example in *In Re Wal-Mart Stores, Inc.*, Judge Armstrong granted certification of a claim
5  for forfeiture of vested vacation wages similar to the claim pled against Defendant JP Morgan.  In the
6  course of discovery in that action, Magistrate Judge Zimmerman required Wal-Mart to produce all of
7  its vacation polices and policies on payments of final wages and payments of wages generally which
8  were voluminous, including e-mails on changes to polices, effectuating such policies, etc.  Counsel for
9  Plaintiff Villegas in this action was also counsel for Ballard in the Wal-Mart Stores, Inc. case and is
10 aware that in that cases Wal-Mart was ordered to produce dozens of banker's boxes of documents on
11 their payroll policies dealing with final pay, on their all their vacation policies *See In Re Wal-Mart*
12 *Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 505 F. Supp. 2d 609 (N.D. Cal. 2007), docket
13 entries 91, 126, 136 and 162 produced as Ex. I to the Hart Decl. in Support of Motion to Compel.

14 These are the same types of claims Plaintiff Villegas is alleging.  This is the same policies and
15 procedures documents requested:  all policies and procedures on vacation (and vacation related days),
16 on recording of time/payment of wages, and on payment of final wages.

17 By contrast JP Morgan in this case produced initially 90 pages of documents and has produced
18 a total of 251 pages.  And, though it knows these are not all of the responsive, non-privileged
19 documents that exist, JP Morgan is refusing to produce further policies and procedures documents
20 dealing with vacation policies and payroll/payment of wages documents.

21 Again, in the *In Re Wal-Mart Stores, Inc.* case that was before this Court and in which full
22 production of policies was ordered—and in which Wal-Mart had to produce its entire payroll and time
23 databases to plaintiffs' counsel these computerized records, these records combined with Wal-Mart's
24 policies ultimately became the basis for plaintiffs' filing for certification and certifying their case.  See
25 *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 2008 U.S. Dist. LEXIS 14756 (N.D. Cal. Feb. 13,
26 2008).  Plaintiff is seeking just such production for certification issues.

27 Further, on top of the databases production, Wal-Mart was ordered to produce tens of
28 thousands of pages of documents on policies, procedures and practices documents relating to similar

- 8 -
PLAINTIFF'S REPLY MEMORANDUM ISO OF MOTION TO COMPEL FURTHER
RESPONSES AND RESPONSIVE DOCUMENTS (CV 09-00261 SBA (EMC))

1  claims as Villegas' claims for vacation and personal days forfeiture and late payment of final wages.
2  *See In Re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 505 F. Supp. 2d 609 (N.D. Cal.
3  2007)

4        Plaintiff asks for a similar production of documents, including all vacation policy and practice
5  documents for the full class period (not all were produced), all internal e-mails regarding payment of
6  final wages—none were produced—documents implementing Defendants' corporate policies
7  regarding such, algorithms for payment and timeliness of payments of wages week to week and at the
8  end of employment, all documents on policies and procedures regarding recording of time worked and
9  payment of payroll week to week.

10        Plaintiff alleges that Defendant JP Morgan does not record time or hours worked properly or
11  pay wages in a timely fashion in their regular payroll cycles and at the end of employment.  Plaintiff
12  alleges that hours <u>worked from pay-period of 4 weeks ago and more are paid in later pay-periods</u> and
13  this violates California Labor Code sections 204 and 226, and 2698-2699.  These are ideal class-wide
14  issues as they deal purely with payroll policies and with payment of wages policies and practices.
15  This catch-up of wages practice of Defendants is a payroll policy uniformly applicable to all job
16  categories for all non-exempt employees.

17        Plaintiff believes that any argument by Defendant that Plaintiff is not entitled to represent all of
18  Defendant's employees with different job titles for such payroll and vacation forfeiture policy-driven
19  claims that Plaintiff Villegas has and is typical of and has suffered just like persons with different job
20  titles or responsibilities is unsupported by law.  *See Lewis v. Wells Fargo & Co.*, 2009 U.S. Dist.
21  LEXIS 36240 (N.D. Cal. 2009); *see also Tennie v. City of New York Department of Social Services*,
22  1987 U.S. Dist. LEXIS 574 at *9 (S.D.N.Y. 1987) (plaintiff with one job title can represent employees
23  with other job titles).

24        With respect to the Requests concerning Defendant's policies for the payment and timing of
25  payments of final wages (Request Nos. 1, 3-10, 25), such Requests are also directly relevant to
26  Plaintiff's claims.  Plaintiff alleges that wages were not calculated and paid out properly when earned
27  but also were owed and not paid out at the end of employment in a timely and proper fashion.  In
28  addition, Plaintiff alleges a vacation forfeiture claim on behalf of all of Defendant's employees, not

just those with Plaintiff's job title. Such policies are not unique to Plaintiff, but applicable to all employees.

With respect to the Requests concerning Defendant's policies on recording hours and timing of payments to employees (Request Nos. 2, 11-13, 24), these also are relevant to Plaintiff's claims. Plaintiff alleges that Defendant does not record time or hours worked properly. For instance, Plaintiff alleges that hours worked from a pay period of four weeks ago and more are paid in later pay periods in violation of California Labor Code Sections 204, 226, 2698-2699. Plaintiff also has a class claim for violation of Cal. Labor Code Section 226 regarding recordkeeping of, among other things, hours worked.

Because Plaintiff's Requests are tailored to the allegations in her complaint, and are for policy documents equally applied to all Defendant's employees, Defendant should be ordered to produce these documents.

**B. Defendant JP Morgan Should be Compelled to Produce Supplemental Responses And _All_ Responsive Documents to Plaintiff's Requests Concerning Defendant JP Morgan's Policies Regarding Vacation and Other Paid Time Off.**

With respect to Request for Production No. 14, Plaintiff seeks the production of all of Defendant's policies, procedures and practices regarding vacation and other days treated like vacation such as floating holidays, personal days, and such paid time off.

Defendant has chosen to respond with "Defendant will produce its Sick Time Policy; Vacation Policies; and Personal Days Policies that were applicable to Plaintiff's position for the time Plaintiff was employed by Defendant." Defendant has never stated it has produced all such responsive documents.

Plaintiff seeks that Defendant be compelled to produce these further documents and also seeks that Defendant be precluded from relying on or producing any further evidence that it has not produced on these policies—as such documents were identified by Defendant in its Initial Disclosures, but were not produced.

As noted above, in *In Re Wal-Mart Stores, Inc.*, this Court granted certification of a claim for forfeiture of vested vacation wages similar to the claim pled against Defendant JP Morgan. In the

1  course of discovery in that action, Magistrate Judge Zimmerman required Wal-Mart to produce all of
2  its vacation polices which were voluminous, including e-mails on changes to polices, effectuating such
3  policies, etc.  *See In Re Wal-Mart Stores, Inc. Wage and Hour Litig.*, No. 06-02069, 505 F. Supp. 2d
4  609 (N.D. Cal. 2007), docket entries 91, 126, 136 and 162 produced as Ex. I to the Hart Decl.  Plaintiff
5  Villegas asks for a similar full and complete production in this case.

6       Again, Defendant only agreed to the employee handbook or policies regarding vacation that
7  applied to Plaintiff while she was an employee—not for the full class period.  Given that the putative
8  class has been pled to include employees who worked at any time between 4 years prior the complaint
9  to the present, many of the putative class members could have worked prior to or after Plaintiff's
10 employment with Defendant and could have had different vacation policies that applied to them –
11 albeit containing the same policies.  As a result, Plaintiff should be entitled to review these policies in
12 order to establish commonality and typicality for purposes of class certification.  Defendant's failure
13 to produce these policies is without justification and thus Plaintiff seeks a full and complete response
14 by way of this motion.  Such production was ordered in *In Re Wal-Mart Stores, Inc*.

15      Plaintiff asks that these documents be produced and further that this Court issue an order that
16 these vacation and paid time off documents to the extent that they were described in Defendant's
17 Initial Disclosures but that have not been produced be produced and that Defendants cannot use them
18 or rely on them as part of their defense in this action.

19 **C.     Defendant JP Morgan Should be Compelled to Produce Documents Containing the**
20 **Contact Information Of Witnesses/Putative Class Members.**

21      Defendant J.P. Morgan in its Opposition brief failed to provide any legitimate reason why it
22 should not have to produce documents that contain the contact information of putative class/witnesses
23 members and cited to no applicable or relevant case that that would support why it would not have to
24 produce documents they have in their possession with this information.

25      Defendants cite to *Planned Parenthood Golden Gate v. Superior Court*, 3 Cal. App. 4th 347,
26 358 (2000), in support of their opposition.  However, *Planned Parenthood* has already been
27 distinguished in the context of a wage and hour class action where the identities of putative members
28 are at issue:

1
2
3
4

> The cases relied on by Wild Oats in which home addresses and telephone numbers were not ordered to be disclosed are inapposite here because the nature of the intrusion and the surrounding circumstances were fundamentally different than those here, changing the analysis entirely. **We have already distinguished Planned Parenthood**, supra, 83 Cal.App.4th 347, and Morales v. Superior Court, supra, 99 Cal. App. 3d 283, as they concerned a vastly more serious privacy intrusion with the possibility of danger and harassment of the abortion clinic staff in Planned Parenthood,

5 *Puerto v. Superior Court*, 158 Cal. App. 4th 1242, 1257 (Cal. App. 2d Dist. 2008) (emphasis added).

6 As mentioned in Plaintiff's moving papers, the issue of sending a pre-certification letter to

7 putative class members is well-settled in favor of sending such a letter on an opt-out basis.

8 Defendants further cite to *Prentice v. Fund For Public Interest Res., Inc.*, 2007 U.S. Dist.

9 LEXIS 71122 (N.D. Cal. 2007). In *Prentice*, however, the action was based on the Fair Labor

10 Standards Act procedure for an "opt-in" collective action whereas here, as this action is one based on

11 California law, the procedure is an "opt-out" class under Rule 23. Under the procedure set forth under

12 the Federal Rules of Civil Procedure, Rule 23, the procedure is an opt-out basis, which is

13 fundamentally different than the FLSA opt-in procedure. As a result, *Prentice* is fundamentally

14 inapplicable to a putative class action filed pursuant to Rule 23. Further, *Prentice* is a district court

15 opinion that distinguishes itself from another district court opinion that reached the other conclusion

16 that such notice should be sent out. *See Adams v. Inter-Con Sec. Sys.*, No. 06-5428 MHP, 2007 U.S.

17 Dist. LEXIS 26881 (N.D. Cal. 2007).

18 Further, Defendant ignores the case law that Plaintiff has cited showing that such production of

19 such contact information is well-established a this point. See *Hoffmann-La Roche Inc. v. Sperling*,

20 493 U.S. 165, 170 (1989) (stating that District Correct was correct "to permit discovery of the names

21 and addresses of the discharged employees"); see also *Pioneer Electronics v. Superior Court*, 40

22 Cal.4th 360 (2007) (California Supreme Court holding such information properly disclosed); *Crab

23 Addison, Inc. v. Superior Court*, 169 Cal. App. 4th 958 (2008) (opt out letter not necessary); *Lee v.

24 Dynamex, Inc*., 166 Cal. App. 4th 1325, 1329 (2008); *Puerto v. Superior Court*, 158 Cal. App. 4th

25 1242 (2008) (compelling employee/witness contact information even in non-class action setting);

26 *Belaire-West Landscape, Inc. v. Superior Court*, 149 Cal. App. 4th 554 (2007) (employer must

27 produce contact information). The California Supreme Court and Courts of Appeal have established

28

1  that such information is a necessary discovery tool and should be produced in a wage and hour class
2  action setting.
3  Importantly, Defendant in its Opposition does not argue that such production would be unduly
4  burdensome or burdensome at all to produce. Similarly and equally important, Defendant in its
5  Opposition does not argue or claim that it does not have such documents with class member contact
6  information.
7  Plaintiff, on the other hand, needs such contact information for <u>pure</u> class certification issues—
8  as one element of evidence to show commonality, typicality, numerosity and predominance. This
9  information, which can lead to declarations used by Plaintiff to support her motion for class is a
10 critical piece of information that is vital to Plaintiff in this case and Defendant proffers to case law or
11 reasons why this information should not be produced.
12 Defendant even chose to not accept Plaintiff's own suggestion that Plaintiff would be
13 amenable to a *Belaire-West* style notice to the class regarding disclosure of such contact information
14 allowing class members to opt-out of such disclosure. Defendants did not agree to this as a
15 compromise solution.

16 **D.  Defendant JP Morgan Should Be Precluded From Using Or Relying On Documents It**
17 **Failed To Identify And Describe In Its Initial Disclosures.**

18 Plaintiff filed a putative class action in the San Francisco County Superior Courts. Defendant
19 JP Morgan did not have to remove this case to this District Court—but it chose to do so. Defendant is
20 a major national banking corporation and has retained experienced counsel from a major national law
21 firm. Defendant in its Initial Disclosures only described certain categories of documents only relating
22 to Plaintiff. Defendant did not present any valid reasons in its Opposition why it should not be
23 precluded from using and relying on documents it did not describe.
24 Defendant knew the requirements of Initial Disclosures in the federal courts and the burden of
25 carefully describing all the documents that a defendant would need to rely on or intended to rely on.
26 Defendant JP Morgan chose to describe only a limited set of documents and should not be able to now
27 avoid the limitations that come with this. Indeed, JP Morgan intentionally chose to draft and serve just
28

1  these Initial Disclosures that they did—and they should be willing and happy to have to abide by this
2  clearly made choice and tactic.
3    Except as otherwise provided by stipulation or court order, "a party must, without awaiting a
4  discovery request, provide to the other parties: . . . "a copy – or a description by category and location
5  – of all documents, electrically stored information, and tangible things that the disclosing party has in
6  its possession, custody, or control and may use to support its claims or defenses[.]"  Fed. R. Civ. P.
7  26(a)(1) (A)(ii).
8    A party who fails to make the required initial disclosure "is not allowed to use that information
9  or witness to supply evidence on a motion, at a hearing, or at trial, except where the failure to comply
10 was "substantially justified" or "harmless."  Fed. R. Civ. P. 37(c)(1).
11   As this Court noted, in *Neothermia Corporation v. Rubicor Medical, Inc.*, "[i]nitial disclosures
12 under Federal Rule of Civil Procedure 26(a), . . . are designed to facilitate the parties' understanding of
13 the case early on and to inform the appropriate scope of discovery." *Neothermia Corp. v. Rubicor*
14 *Med., Inc.*, 345 F. Supp. 2d 1042, 1045 (N.D. Cal. 2004).
15   Defendant cites to the case of *Von Brimer v. Whirlpool Corporation*, 536 F.2d 838 (9th Cir.
16 1976), which is actually helpful to the evidentiary preclusion remedies Plaintiff Villegas seeks in this
17 case.  In *Von Brimer* the court imposed exclusionary sanctions.  These sanctions were ultimately
18 upheld as being within the sound discretion of the Court under Rule 37(b).  Indeed, Rule 37(b)
19 specifically allows the District Court the discretion to issue an Order prohibiting Defendant in this
20 case from introducing designate matters into evidence.  Thus, it is within the power of this Court to
21 issue an Order that Defendant is precluded from introducing into evidence all documents they cited to
22 in their Initial Disclosures and failed to produce, such as vacation policies and policies on payment of
23 final wages and recording and payment of wages that Defendant has not produced, and precluding
24 Defendant from introducing into evidence documents that it failed to describe in its Initial Disclosures
25 that are beyond those relating to Plaintiff's own situation and relate to other putative class members.
26 Plaintiff seeks such an Order.
27
28

Defendant chose to identify only policy documents all limited to Plaintiff's **individual situation** knowing full well that this case was filed as a putative class action.[3]  It is likely that Defendants did this to avoid having to produce documents broader than these documents—since Defendants are duty bound to produce their full Initial Disclosures when asked to by Plaintiff.  This is a tactical choice by Defendants who removed this case to federal court knowing of the initial disclosures requirement.  Defendants should be bound by this limited description of initial disclosure documents and not introduce evidence not described.

### IV.  CONCLUSION

For the reasons set forth above, Plaintiff requests that this Court issue an order compelling Defendant J.P. Morgan Chase Bank N.A. to provide full and proper supplemental responses and all responsive documents to Plaintiff's Request for Production Nos. 1-14 and 19-25, Set No. One. Plaintiff further requests an order from this Court that the documents requested in Requests for Production Nos. 1-14 and 19-25 that were described in Defendant's Initial Disclosures but that have not been produced be produced and that Defendant cannot use them or rely on them as part of their defense in this action.

**DATED: August 19, 2009**                **LAW OFFICES OF PETER M. HART**

By: _____/s/_____
**Peter M. Hart, Esq.
Attorney for Plaintiff Villegas**

---

[3]  Defendant disclosed the following categories of documents:
1. Plaintiff's personnel file and employment records;
2. Documents regarding Plaintiffs vacation days, including but not limited to accrual and usage;
3. Documents regarding Plaintiff s leaves, sick days or absences;
4. Documents regarding Plaintiff s compensation, including but not limited to what forms of compensation Plaintiff was eligible for or entitled to;
5. Documents regarding Plaintiff s hours worked, timesheet records and other similar documents;
6. Plaintiffs payroll records, wage statements, W-2s, pay stubs and other similar documents;
7. Chase's policies regarding incentive payments and vacation time for which Plaintiff could have been eligible.