UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NICOLE VILLEGAS,

         Plaintiff,

    v.

J.P. MORGAN CHASE & CO., *et al.*,

         Defendants.
_____/

No. C-09-0261 SBA (EMC)

**ORDER RE CROSS-BRIEFS ON ADEQUACY**

    Currently pending is a dispute over whether Plaintiff has made a prima facie showing that she is an adequate representative. A hearing was held on this matter on March 3, 2010. Having considered the briefs filed by the parties, the oral argument of counsel, and the related briefs previously filed by the parties, the Court hereby rules as follows.

## I.    FACTUAL & PROCEDURAL BACKGROUND

    Back in July 2009, Plaintiff filed two discovery motions in which she sought to compel Defendant to provide class-wide discovery. *See* Docket Nos. 35, 37 (motions). In an order issued in September 2009, the Court deferred the issue of whether Plaintiff could obtain class-wide discovery because there was an issue as to whether Plaintiff had made a prima facie showing that (1) she is an adequate representative and (2) the practices complained of were typical and/or common to the asserted class. *See* Docket No. 63 (Order at 1). The Court noted that, in *Mantolete v. Bolger*, 767 F.2d 1416 (9th Cir. 1985), the Ninth Circuit held that a court may refuse class-wide discovery where the plaintiff has failed to "advanc[e] a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class

allegations." *Id.* at 1424. The Court then permitted Plaintiff to take discovery on the initial question of whether she is an adequate representative, after which it would determine whether Plaintiff had in fact made a prima facie showing. *See* Docket No. 63 (Order at 2). Per Plaintiff's request, the Court limited the discovery to documents. *See* Docket No. 63 (Order at 2) ("As argued by Plaintiff, this showing will be based on documents; there shall be no depositions at this juncture.").

Subsequently, the parties had disputes over what discovery should be produced so that Plaintiff could try to establish a prima facie case of adequacy. The Court issued two orders regarding these disputes. *See* Docket No. 68 (order, filed on 10/7/2009); Docket No. 90 (order, filed on 1/28/2010). In neither case did the Court order depositions as (1) Plaintiff had previously indicated that she wanted only document discovery and (2) Plaintiff did not thereafter ask for leave to take depositions. Moreover, during these proceedings, Plaintiff indicated to the Court that she did not need additional documents on several of the claims at issue. *See* Docket No. 68 (Order at 1-2) ("Plaintiff stated that she did not need any additional documents with respect to the issues of personal days, incidental time-off, or untimely wages (even assuming that Plaintiff is allowed to amend her complaint to include claims for violations of California Labor Code §§ 204 and 210).").

On February 24, 2010, the parties provided to the Court supplemental briefs on the issue of whether Plaintiff had made a prima facie showing that she is an adequate representative. As indicated above, the Court held a hearing on this matter on March 3, 2010.

## II. DISCUSSION

Plaintiff's operative complaint asserts various claims but the critical claims are as follows: (1) the claim for failure to pay vested vacation wages; (2) the claim for failure to pay commission wages; and (3) the failure to pay wages in a timely fashion. With respect to each claim, Plaintiff must make a prima facie showing that she is an adequate representative before being entitled to broad class-wide discovery.

A.  Failure to Pay Vested Vacation Wages

Plaintiff's claim for failure to pay vested vacation wages is based on Defendant's alleged failure to pay for (1) incidental time-off ("ITO"), (2) personal days, and (3) floating holidays. For

purposes of this opinion, the Court assumes that each of these categories constitutes vacation time under the California Labor Code.

1. Incidental Time-Off

Defendant argues that Plaintiff has failed to make a prima facie showing that she is an adequate representative on the ITO claim because there is insufficient evidence that she was entitled to ITO in the first place. According to Defendant, while it did have an ITO policy, it was discontinued on January 1, 2005 -- *i.e.*, before Plaintiff was hired in 2008. In support of that contention, Defendant has provided a declaration from a HR Policies Manager in which she states that, "[e]ffective January 1, 2005, Chase discontinued its Incidental Time Off ('ITO') Days policy for its U.S. employees. Thus, any employee hired on or after January 1, 2005, would not have earned, or been eligible, for any ITO days." Docket No. 66 (Henderson Decl. ¶ 2). Defendant has also provided a document that corroborates the HR Policies Manager's declaration -- more specifically, a screen shot from its HR Policy Guide, as it existed in February 2005, which lists various benefits including vacation-related pay, but does not list ITO as any category of "Time Away from Work." *See* Docket No. 83 (Kim Decl., Ex. M).

In her brief, Plaintiff makes various arguments as to why she has made a prima facie showing. None are persuasive. For example, the fact that Defendant produced an ITO policy as part of discovery is not tantamount to a concession. Also, that the ITO policy which was produced made a reference to 2008 in giving an example of ITO eligibility is not compelling because (1) the reference was made only as part of an example which projected into the future and (2) the policy was dated 2004, *see* Docket No. 96 (Yoon Decl., Ex. H) -- *i.e.*, *prior* to the alleged discontinuation of the policy in 2005. Plaintiff points to another policy produced by Defendant -- the personal days policy, *see* Docket No. 96 (Yoon Decl., Ex. E) -- as proof that ITO was available post-2005, but that evidence is not persuasive. While the personal days policy provides as an example "Employee D" -- hired in 2005 -- who has 16 hours as a "[t]otal number of personal days/hours and ITO days available in 2006," those 16 hours could have come solely from personal days/hours, and not ITO. Docket No. 96 (Yoon Decl., Ex. E) (JPM/VIL 64). Moreover, it is telling that the example for "Employee A" expressly states that the employee has "ITO days from 2004," which is consistent

with Defendant's position that the ITO policy was discontinued in 2005.  Docket No. 96 (Yoon Decl., Ex. E) (JPM/VIL 64).  Moreover, Example A also contrasts with Example D by making express reference to ITO days whereas the latter does not.  The document is entirely inconsistent with the HR Policies Manager's declaration and the 2005 screen shot.

The only additional argument made by Plaintiff that is deserving of some analysis is her assertion that she has made a prima facie showing that she was entitled to ITO based on her supplemental declaration.  In her supplemental declaration, Plaintiff states that Defendant made information about benefits available online and "[t]he on-line benefits with respect to time off included vacation, Personal Days, Incidental Time Off, and Floating Holidays."  Docket No. 96 (Supp. Villegas Decl. ¶ 5).  The Court is not satisfied that this self-serving statement is enough to make out a prima facie case, particularly when Plaintiff's original declaration, filed in September 2009, made no mention of this fact.  *See* Docket No. 67 (Villegas Decl.).  Nor did Plaintiff make any mention of this fact in the papers that she filed in December 2009.  *See* Docket No. 78 (Pl.'s Br.).  Furthermore, she provides no corroboration that on-line benefits, at the time of her hire in 2008, promised ITO benefits.

At the hearing, Plaintiff argued that her supplemental declaration is no less self-serving than the HR Policies Manager declaration submitted by Defendant, but this ignores the fact that Defendant provided a document to corroborate the declaration.  Furthermore, it is notable that, although Plaintiff has been aware of the HR Policies Manager declaration since September 2009, she has never asked for leave to take that person's deposition.  At the hearing, Plaintiff contended that she could not take any deposition because this Court's order barred depositions.  *See* Docket No. 63 (order).  But this contention fails to take into account that (1) Plaintiff was the party who asked discovery to be limited to documents and (2) nothing in the Court's order barred Plaintiff from asking for leave to take a deposition after the HR Policies Manager declaration was submitted.  *See* Docket No. 63 (Order at 2) ("*As argued by Plaintiff*, this showing will be based on documents; there shall be no depositions *at this juncture*.") (emphasis added).

The Court therefore concludes that Plaintiff has failed to make out a prima facie showing that she is an adequate representative on the ITO claim despite an adequate opportunity to obtain

4

1  supporting evidence.  Plaintiff has failed to make a prima facie case that she was ever entitled to ITO
2  in the first place.

      2.      <u>Personal Days</u>

The personal days policy produced by Defendant provides that, for newly hired or rehired employees, "[i]n the calendar year in which your employment begins, your hire or rehire date determines the number of personal days you are eligible to receive once you have completed the Introductory Period."  Docket No. 96 (Yoon Decl., Ex. E) (JPM/VIL 64).  According to Plaintiff, given these terms, she was entitled to eight hours of personal days based on her date hire in June 2008 and her completion of the Introductory Period.

The problem for Plaintiff is that Defendant's policy also states that, for California employees, "[p]ersonal days are granted in January of each year; they are not accrued on a monthly basis. . . . There is no retroactive granting of personal days."  Docket No. 96 (Yoon Decl., Ex. E) (JPM/VIL 67).  Accordingly, it is clear from the policy that even though "your hire or rehire date determines the number of personal days you are *eligible* to receive once you have completed the Introductory Period," Docket No. 96 (Yoon Decl., Ex. E) (JPM/VIL 64) (emphasis added), for California employees, those personal days are not *accrued* until January 1.  Plaintiff's contention that the terms of the policy are ambiguous is without merit.

At the hearing, Plaintiff suggested for the first time that, if the personal days policy means that personal days are only granted in January (at least for California employees) and that employees are subject to forfeiting personal days, that is a violation of California law.  In support of this argument, Plaintiff cited *Suastez v. Plastic Dress-Up Co.*, 31 Cal. 3d 774 (1982).  Defendant disagreed, contending that, under *Suastez*, this approach is lawful.  The Court permitted the parties to provide additional briefing on this specific issue and therefore defers ruling on whether or not Plaintiff is an adequate representative on the personal days claim.

      3.      <u>Floating Holidays</u>

The holiday policy produced by Defendant provides that, "[i]f you are a full-time or part-time salaried nonexempt employee, and you earn a floating holiday because your business was open on a holiday generally observed by the firm, the floating holiday is equivalent to the number of

1  hours that you are regularly scheduled to work on that workday." Docket No. 65 (Kim Decl., Ex. J).
2  Plaintiff claims that she worked on July 4, 2008 (a Friday), *see* Docket No. 67 (Villegas Decl. ¶ 17),
3  and therefore was entitled to a floating holiday.

4  Defendant contests Plaintiff's claim that she worked on July 4, 2008. Defendant has
5  produced a timesheet for that period of time which indicates that Plaintiff did not work on July 4,
6  2008, but was given eight hours of holiday pay. *See* Kim Decl., Ex. H. Defendant has also provided
7  a declaration from Plaintiff's supervisor stating that Plaintiff "never requested to work on the July 4,
8  2008 holiday" and that she "did not report or submit any overtime hours worked for July 4, 2008."
9  Docket No. 84 (Howard Decl. ¶ 3). Finally, Defendant has confirmed in writing to Plaintiff that it
10 has no e-mails or other correspondence evidencing Plaintiff's alleged work on that day. *See* Docket
11 No. 93 (Def.'s Br. at 5); Docket No. 94 (Kim Decl., Ex. A) (e-mail).

12 Plaintiff has provided only a self-serving declaration to the contrary with no corroboration.
13 Because Defendant has provided both a declaration and a corroborating document indicating that she
14 did not work on July 4, 2008, and because Defendant has searched for but been unable to locate
15 documents indicating that Plaintiff worked on July 4, 2008, the Court concludes that Plaintiff has
16 failed to make a prima facie showing on the floating holidays claim.

17 B.    Failure to Pay Commissions

18 In her papers, Plaintiff claims that Defendant employed her as a "Loan Funder/Closer," *see*
19 Docket No. 67 (Villegas Decl. ¶ 2), and failed to pay her wages for commissions that she earned.
20 More specifically, Plaintiff maintains that "I worked on enough loans in the months I worked to
21 qualify for commission payment as a funder" and that "I worked on a sufficient number of accounts
22 as a Closer to meet the commission payment requirements." Docket No. 67 (Villegas Decl. ¶¶ 6-7).

23 With respect to Plaintiff's claim that she worked on enough loans to qualify for commissions
24 as a funder, again, all the Court has is Plaintiff's self-serving declaration. In contrast, Defendant has
25 produced both a chart summarizing the number of loans funded by Plaintiff during her employment,
26 *see* Docket No. 83 (Kim Decl., Ex. E), as well as the underlying documents for the loans. The chart
27 reflects that Plaintiff did not fund a sufficient number of loans to qualify for commissions for any
28

6

month that she worked for Defendant.  Plaintiff has failed to point to any of the underlying documents for the loans which reflects that the numbers on the chart are incorrect.

At the hearing, Plaintiff presented for the first time a new theory – *i.e.*, that there were loans that she did all the funding work for but which were subsequently allocated to other people after she stopped working for Defendant and for which she did not receive credit.  According to Plaintiff, if she had received credit for these loans, then she would have qualified for commissions.  The Court is not persuaded by Plaintiff's new argument.  First, it is troubled by the fact that Plaintiff did not raise this new theory even though this issue has been at play since July 2009.  It was raised for the first time at the hearing herein.  Second, Plaintiff has provided no evidence on the merits.  She has not provided even one concrete example of a loan that allegedly falls into this category.  Nor has she provided any specifics about the number of loans that allegedly fall into this category.  Tellingly, in September 2008, the last month that Plaintiff worked for Defendant, she funded only 6 loans.  *See* Docket No. 83 (Kim Decl., Ex. E).  To qualify for commissions, she would have had to done funding work on 95 more loans.

As for Plaintiff's claim that she worked on a sufficient number of loans to qualify for commissions as a closer, there are several problems.  First, in the operative complaint, Plaintiff refers to being a funder only, not a closer.  *See* SAC ¶ 8 (alleging that she had the title of "Funder").  Thus, even though her offer letter referred to her title as being "Loan Closer/Funder," *see* Docket No. 96 (Yoon Decl., Ex. B), Plaintiff seems to have understood her responsibilities to be as a funder only.  Second, the declaration submitted by Plaintiff's former supervisor states that Plaintiff's "specific job position has always been that of a Senior Loan Funder and she only performed Loan Funder duties [and] Ms. Villegas was never a Loan Closer and did not perform Loan Closer duties."  Docket No. 84 (Howard Decl. ¶ 2).  Finally, Defendant has produced the underlying loan files as ordered by the Court, *see* Docket No. 90 (Order at 1), and Plaintiff has not pointed to any loan file in which she acted as a closer.

The Court therefore concludes that Plaintiff has failed to make a prima facie showing that she is an adequate representative on the claim for failure to pay commissions.  The Court also notes that, even if Plaintiff had successfully made a prima facie showing of adequacy, she would still have

7

had to establish a prima facie showing of commonality before being entitled to any class-wide discovery (as the Court instructed in its October 2009 order). Plaintiff's own declaration reflects that there would be no commonality because she testified as follows: "I exceeded the criteria for these two commissions and/or non-discretionary bonuses and yet was never paid them. Indeed, I exceeded the very same criteria *on which my co-workers in the same job positions were paid commissions and non-discretionary bonuses for closing loans or for getting funding of them.*" Docket No. 67 (Villegas Decl. ¶ 8) (emphasis added).

C.     <u>Failure to Pay Wages in Timely Fashion</u>

Plaintiff claims that Defendant has violated California Labor Code § 204 by routinely paying wages late. More specifically, Plaintiff asserts that she was "routinely paid *overtime wages* earned from prior pay periods. For example, overtime wages earned by Plaintiff between the pay period of July 16 and July 31, 2008 were not paid to Plaintiff until August 29, 2008." Docket No. 67 (Mot. at 9) (emphasis added).

California Labor Code § 204(b) provides in relevant part that, "[n]otwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period." Cal. Lab. Code § 204(b)(1). Therefore, overtime for the period July 16-31, 2008 should have been paid by August 15, 2008.[1]

According to Defendant, overtime for that period was paid by August 15, 2008. But the paystub of August 29, 2008 – at least on its face – indicates to the contrary. It is true, as Defendant points out, that the "other pay" beginning and end dates are listed (in the top right hand corner) as July 28-August 8, 2008, which would make the paydate of August 29, 2008, appropriate. However, the paystub also indicates that 7.00 hours of overtime were paid for the period July 16-July 31, 2008. If the 7.00 hours were in fact incurred during that time period, then payment should have been made on August 15, 2008 (the last day of the following pay period), not August 29, 2008.

Accordingly, the Court concludes that Plaintiff has made a prima facie showing that she is an adequate representative on the § 204 claim for failure to pay overtime wages in a timely fashion.

---

[1] Defendant previously conceded such. *See* Docket No. 82 (Opp'n at 12) (stating that Plaintiff's overtime was paid on August 15, 2008).

8

1  That being said, the Court does not find that Plaintiff is therefore entitled to take broad class-wide
2  discovery.  At the hearing, the Court ordered the parties to meet and confer to determine whether
3  they could reach any agreements that would either obviate or at least limit the discovery that
4  Plaintiff would need to make her motion for class certification.  Plaintiff agreed the underlying
5  timesheets of other employees were not necessary at this time.

D.  New § 226 Theory

Finally, the Court notes that, although Plaintiff did plead in her SAC a claim for violation of California Labor Code § 226, she has now brought forth a new theory not specifically articulated in her SAC as to how Defendant violated § 226.[2]  That is, Plaintiff argues that Defendant failed to keep accurate time records because it engaged in the practice of paying her 86.67 hours on a semi-monthly basis regardless of actual hours worked.  She contends the DLSE has held this practice violates § 226.  *See* Pl.'s Br. at 11.  Because this is a new issue not previously raised by Plaintiff, the Court afforded Defendant an opportunity to provide supplemental briefing on this issue.

### III.  CONCLUSION

In sum, the Court concludes as follows:

(1)  Plaintiff has failed to make a prima facie showing that she is an adequate representative on the ITO claim, the floating holiday claim, and the commission claim.  Class discovery is denied on these claims.

(2)  The Court defers ruling on whether Plaintiff has made a prima facie showing that she is an adequate representative on the personal days claim predicated on the theory that a policy preventing accrual of personal days until January 1 of each year violates the California Labor Code.  Plaintiff has not made a prima facie showing that she is entitled as a matter of contract to personal days and thus class discovery predicated on that claim is denied.

---

[2] *See* SAC ¶ 62 ("[A]mong the violations of Labor Code § 226, DEFENDANTS failed to keep accurate records of Plaintiff's and the class members['] rates of pay, rates of overtime pay (as a result of DEFENDANTS' failure to calculate the proper rate of overtime pay), net wages earned, daily or weekly overtime pay, commissions earned and/or vacation earned, pay periods in which wages were earned, pay periods in which wages were earned and paid, and who failed to state the name of the legal entity who is the employer.").

(3) Plaintiff has made a prima facie showing that she is an adequate representative on the § 204 claim. The parties shall meet and confer to determine the scope and timing of discovery or a stipulation obviating discovery. The Court anticipates the discovery, if any, will focus on a sampling of paystubs.

(4) The Court defers ruling on whether Plaintiff has made a prima facie showing on the § 226 claim based on the new theory described above.

The Court will rule on Numbers (2) and (4) after reviewing the supplemental briefs ordered at the hearing.

IT IS SO ORDERED.

Dated: March 9, 2010

_____
EDWARD M. CHEN
United States Magistrate Judge

10