1
2
3
4
5
6
7
8               UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      OAKLAND DIVISION

11

12   NICOLE VILLEGAS, as an individual and on        Case No:  C 09-00261 SBA
     behalf of others similarly situated,
13                                                   **ORDER GRANTING PLAINTIFF'S**
                   Plaintiff,                        **MOTION FOR PRELIMINARY**
14                                                   **APPROVAL**
            vs.
                                                     Dkt. 157 and 162
15
     J.P. MORGAN CHASE & CO., a Delaware
16   corporation; J.P. MORGAN CHASE BANK,
     N.A., a national association; CHASE BANK
17   USA, N.A., a national association; and DOES
     1 through 50, inclusive,
18
                   Defendants.
19

20

21          This is a wage and hour class action brought by Plaintiff Nicole Villegas on behalf

22   of herself and similarly situated individuals who were classified as non-exempt employees

23   by Defendants J.P. Morgan Chase & Co., JPMorgan Chase Bank, N.A., and Chase Bank

24   USA, N.A. (collectively "Defendants") from December 17, 2004 to the present.  The

25   parties are presently before the Court on Plaintiff's Motion for Preliminary Approval of

26   Class Action Settlement.  Dkt. 157.  Having read and considered the papers filed in

27   connection with this matter and considered the arguments of counsel, the Court hereby

28   GRANTS the motion and preliminarily approves the proposed class settlement.

# I.  BACKGROUND

## A.  OVERVIEW

Plaintiff filed the instant action in Alameda County Superior Court on December 18, 2008.  Defendants removed the action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and filed a motion to dismiss.  Dkt. 1, 6.  On March 9, 2009, the Court granted in part and denied in part the Defendants' motion.  Dkt. 17.  Plaintiff thereafter filed a First Amended Complaint on March 18, 2009.  Dkt. 18.  The Court subsequently granted Plaintiff's unopposed motion for leave to file a Second Amended Complaint.  Dkt. 73. Thereafter, the parties stipulated to the filing of a Third Amended Complaint ("TAC"), which was filed on January 6, 2011.  Dkt. 131, 132.  The TAC is the operative pleading before the Court.

The TAC alleges that in 2008, Plaintiff worked as a non-exempt "Funder" for Defendants for a three month period, during which she allegedly worked more than eight hours per day and/or forty hours per week.  TAC ¶ 8.  Plaintiff claims that she was not paid overtime, was not paid in a timely manner and received inaccurate wage statements.  Id.  In addition, upon termination, Plaintiff allegedly was not paid accrued commissions and/or accrued but unused vacation pay.  Id.  The pleadings allege state law causes of action for: (1) violation of California Labor Code § 227.3[1] based on an improper forfeiture of vested vacation wages; (2) failure to pay commission wages; (3) failure to pay overtime wages; (4) violation of Labor Code §§ 201-204 for failure to pay wages in a timely manner; (5) violation of Labor Code § 226 for violation of record-keeping requirements; (6) violation Business and Professions Code § 17200 for unfair and unlawful business practices; (7) violation of Labor Code § 2698 (also known as the Private Attorney General Act or "PAGA") for civil penalties ($100/day per employee per pay period for the initial

---

[1] Unless otherwise noted, all references are to the California Code.

violation, $200 for each subsequent violation).[2]  Defendants filed an Answer to the TAC on January 24, 2011.  Dkt. 135.

### B.  SETTLEMENT

#### 1.  Proposed Settlement Class

On February 15, 2011 and March 16, 2011, the parties participated in a mediation session before mediator Michael Dickstein and reached a Joint Stipulation of Settlement and Release ("Settlement").  The Settlement provides for the certification of two settlement classes:  (1) the Pay Stub Settlement Class—California employees who worked for Defendants between December 17, 2004 and June 30, 2009 who were classified as non-exempt; and (2) the Vacation Days Settlement Class Members—California employees who worked for Defendants between December 17, 2004 and March 31, 2011 which are designated as non-exempt during that time period.  Settlement ¶ 2; Hart Decl. Ex. A at 28, Dkt. 157-1.  Plaintiff avers that these classes (collectively "the Settlement Class") had their vested vacation wages improperly forfeited by Defendants, were not timely paid their wages during their employment and were not provided with accurate wage statements. Mot. at 2, Dkt. 157.  There is no settlement for the non-payment of overtime wages.

#### 2.  Settlement Payments and Attorneys' Fees

Pursuant to the terms of the Settlement, Defendants have agreed to make a maximum total payment of $9,225,000 into a gross settlement fund.  Settlement ¶ 9(a).  The Settlement permits Plaintiff's counsel to seek an award of up to one-third (1/3) of the gross settlement (estimated to be $3,075,000) in attorney's fees.  Id. ¶ 10.[3]  Litigation costs, a payment to the LWDA, claims administration costs and the employer's share of payroll

---

[2] Under PAGA, a plaintiff may seek penalties in the sum of one hundred dollars ($100) per aggrieved employee, per pay period, for an initial Labor Code violation, and two hundred dollars ($200) for each subsequent violation per aggrieved employee, per pay period.  Cal. Lab. Code § 2699(f)(2).  If an employee successfully recovers an award of civil penalties, PAGA mandates that 75 percent of the recovery be paid to the Labor and Workforce Development Agency ("LWDA"), leaving the remaining twenty-five percent as recovery for the employee.

[3] The parties have since agreed to reduce Plaintiff's counsel's fees to twenty-five percent (25%) of the Settlement.  Dkt. 162.

costs also will be deducted from the gross fund.  Id.  The *net* settlement amount, reflecting the amount available to pay claims made by class members, is projected to be $6,000,000. Id. ¶ 6(b).  Eighty percent (80%) of the net fund will be allocated to the Vacation Days Settlement Class and twenty percent (20%) will be allocated to the Pay Stub Settlement Class.  Id. ¶ 11.  The actual payout to claimants will be based on the number of workweeks each class member worked during the applicable class period.  Id.  Based on Defendants' payroll records, Plaintiff anticipates that the aggregate class will not exceed 23,500 members, and that the average payout will be approximately $255.00.  Mot. at 3.

The Settlement contains a reversion feature that allows Defendants to retain a significant amount of the settlement proceeds, depending on the number of claims submitted.  This provision states:

> The NFV [Net Fund Value] is estimated at approximately SIX MILLION DOLLARS ($6,000,000). In consideration for settlement and a release of claims of the Settlement Class against Defendants, Defendants agree to pay to each member of the Settlement Class who returns a valid and timely Claim Form ("Qualified Claimant"), a pro-rata share of the NFV pursuant to the calculations described herein. *To the extent that Settlement Class Members do not submit a claim for their pro-rata share of the NFV, any unclaimed funds shall remain the property of Defendants if at least sixty percent (60%) of the NFV is claimed.* To the extent that less than sixty percent (60%) of the NFV is claimed, Defendants will pay out sixty percent (60%) of the NFV, and the amount of the fund between the claimed amount and sixty percent (60%) of the NFV will be distributed to the Qualified Claimants on a pro-rata basis.

Settlement ¶ 9(b) (emphasis added).  Thus, if the total value of the claims submitted amounts to sixty percent of the net settlement fund, Defendants need not pay the remaining forty percent (i.e., approximately $2,400,000) to the class.

## C.   CURRENT PROCEEDINGS

Plaintiff filed a motion for class certification on March 16, 2011.  Dkt. 141.  On June 3, 2011, however, the parties jointly notified the Court that they had reached a settlement and requested that the Court vacate the hearing on the motion for class certification, and vacate the trial date and all other related deadlines.  Dkt. 146.  The Court approved the

stipulation and set a briefing schedule on the motion for preliminary approval of the class settlement. Dkt. 151, 156.

Plaintiff filed her motion for preliminary approval on October 18, 2011. Dkt. 157. In her motion, Plaintiff moves to: (1) conditionally certify two settlement classes under Federal Rule of Civil Procedure 23(a) and (b)(3); (2) preliminarily approve the settlement as "fair, reasonable and adequate" under Rule 23(e); (3) appoint Class Counsel; (4) approve dissemination of Notice to the class; and (5) set a date for the final approval hearing.

## II. **DISCUSSION**

### A. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

Plaintiff first moves for conditional certification of the Pay Stub Settlement Class and the Vacation Day Settlement Class, which are defined above. A class action may be certified if it meets the four prerequisites identified in Federal Rule of Civil Procedure 23(a) *and* additionally fits within one of the three subdivisions of Rule 23(b). Rule 23(a) states:

> (a) **Prerequisites**. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The grant or denial of class certification is a matter of the district court's discretion. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).

The Court finds that each of the requirements of Rule 23(a) has been satisfied. First, the class is numerous, as there are potentially 23,500 class members. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998) ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'") (quoting in part Rule 23(a)(1)). Second, the issues facing the class arise from common questions

involving whether Defendants' policies contravene various provisions of the California Labor Code.  See id.  Third, the typicality requirement is met, as there is no dispute that the injuries suffered by Plaintiff is the same as those as the class.  See Hanon v. Dataprods. Corp., 976 F.2d 497, 508 (9th Cir. 1992).  Finally, Plaintiff appears to be an adequate class representative based on the lack of any apparent conflict between her and the class and the fact that she has actively pursued her claims against Defendants.  See Ellis, 657 F.3d at 985.

Certification under Rule 23(b)(3) is appropriate where: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Id. 23(b)(3).  Plaintiff's motion only makes a passing reference to this requirement.  Mot. at 14.  Nevertheless, given the nature of the claims alleged in this action, it is apparent based on the record presented that both components of Rule 23(b)(3) are satisfied.  See, e.g., Gardner v. GC Servs., LP, No. 10cv0997-IEG (CAB), 2011 WL 5244378, at *5 (S.D. Cal. Nov. 1, 2011) (finding that Rule 23(b)(3) was satisfied where "the claims stem from GC Services' alleged uniform policy of requiring account representative to perform certain pre-shift, post-shift, and lunch time tasks without compensation…."); Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 473 (E.D. Cal. 2009) (finding predominance, despite minor factual difference between individual class members, where the case involved "alleged policies that required class members to work without compensation, meal and rest periods, and/or reimbursement for expenses"); In re Wells Fargo Home Mortg. Overtime Pay Litig., 527 F. Supp. 2d 1053, 1065-68 (N.D. Cal. 2007) (finding predominance where, as a general matter, the defendant's policy and practice regarding compensation and exemption was uniform for all putative class members).

In sum, the Court finds that Plaintiff has carried her burden of demonstrating that conditional certification of the Settlement Class, consisting of the Pay Stub Settlement Class and the Vacation Day Settlement Class, is warranted under Rule 23(a) and (b)(3).

**B.** **PRELIMINARY APPROVAL OF SETTLEMENT**

Rule 23 requires judicial review of any settlement of the "claims, issues, or defenses of a certified class." Fed. R. Civ. P. 23(e). The decision of whether to approve a proposed class action settlement entails a two-step process. See Manual for Complex Litig. § 21.632 (4th ed. 2004). The court first conducts a preliminary fairness evaluation. Id. If the court preliminarily approves the settlement, notice to the class is then disseminated and a "fairness" or final approval hearing is scheduled. Id. The second step of the process culminates in a fairness hearing at which the proponent of the settlement must demonstrate that the settlement is "fair, reasonable, and adequate." Id.; Fed. R. Civ. P. 23(e)(2). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) (citation omitted).

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco, 688 F.2d 615, 625 (9th Cir. 1982). Where, as here, a settlement has been reached prior to formal class certification, "a higher standard of fairness" applies due to "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court designated class representative[.]" Hanlon, 150 F.3d at 1026. In undertaking a fairness inquiry, the settlement must be "taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Id. The Court has no power to "delete, modify or substitute certain provisions"—and the settlement "must stand or fall in its entirety." Id.

To make a fairness determination, the district court must balance a number of factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel;

(7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  See Molski v. Gleich, 318 F.3d 937, 953 (9th Cir. 2003).  Given that some of these "fairness" factors cannot be fully assessed until the Court conducts the final approval hearing, "'a full fairness analysis is unnecessary at this stage.'"  See Alberto v. GMRI, Inc., 252 F.R.D. 652, 665 (E.D. Cal. 2008) (citation omitted).  Rather, preliminary approval of a settlement and notice to the proposed class is appropriate:  if "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval . . . ."  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, § 30.44 (2d ed. 1985)).  As will be discussed below, the Court is persuaded that Plaintiff has made a sufficient showing for preliminary approval.

### 1.    The Settlement Process

The first factor addresses the means by which the parties reached a settlement.  In the instant action, the Settlement was reached following two sessions with a private mediator experienced in wage and hour class actions. Hart Decl. ¶ 8.  This tends to support the conclusion that the settlement process was not collusive.  See Satchell v. Fed. Exp. Corp., No. C 03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").  In addition, those discussions were informed by the discovery obtained by Plaintiff in this action.  Plaintiff took two depositions of Defendants, pursuant to Federal Rule of Civil Procedure 30(b)(6), and propounded written discovery, which resulted in production of thousands of pages of documents.  These facts further support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement.

### 2.    Obvious Deficiencies

The Court next considers whether there are any obvious deficiencies with the Settlement.  At the hearing on the instant motion, the Court expressed concern regarding

the fact that the settlement represents only a small percentage of the Defendants' potential exposure. See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968) (noting that in evaluating the fairness of a compromise, the court should "compare the terms of the compromise with the likely rewards of litigation."). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin. Corp. Secs. Litig., 213 F.3d 454, 459 (9th Cir. 2000). Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment. Id. (noting that whether the settlement is fair and adequate depends on the "the difficulties in proving the case[.]"); accord Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 303 (E.D. Cal. 2011).

Here, the gross settlement is approximately fifteen percent (15%) of the potential recovery against Defendants. At the hearing, however, Plaintiff's counsel acknowledged that some of Plaintiff's claims were not as viable as they had originally envisioned—which is reflected in the fact that the Settlement does not include any payment for overtime wages. Thus, the settlement amount, at least preliminarily, appears to be fair and adequate. See id. ("the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate."). At any rate, issues concerning the amount of the settlement are better resolved at the final approval hearing. See Harris v. Vector Marketing Corp., No. C 08-5198 EMC, 2011 WL 1627973, at *14 (N.D. Cal. April 29, 2011) (noting that after the claims process is completed, "the parties and the Court will be in a position to accurately calculate the value of the settlement and compare it to the maximum damages recoverable were the Plaintiff class to succeed at trial").[4]

---

[4] In her motion papers, Plaintiff also asserts that the settlement is fair given Defendants' "severe financial stress." See Mot. at 18; Harris Decl. ¶ 10. No facts are presented to support this conclusory statement. To the extent that the parties desire the Court to consider Defendants' financial condition in evaluating the fairness of the settlement, they should endeavor to provide the Court more details regarding this issue in their motion for final approval.

The Court also expressed misgivings regarding the proposed fee award which is based on one-third of the Settlement.  "In common fund cases such as this, [the Ninth Circuit has] established twenty-five percent (25%) of the common fund as the 'benchmark' award for attorney fees."  Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993).  On June 19, 2012, the parties submitted a stipulation notifying the Court that the parties have revised their settlement agreement to reflect that Plaintiff's counsel will receive twenty-five percent (25%) of the Settlement.  Dkt. 162.  As such, the Court finds that the proposed, revised fee award is presumptively reasonable.

### 3.   Preferential Treatment

Under the third factor, the Court examines whether the Settlement provides preferential treatment to any class member.  The settlement directs that eighty percent (80%) of the net settlement fund is to be allocated to the Vacation Days Settlement Class and twenty percent (20%) is to be allocated to the Pay Stub Settlement Class.  Settlement ¶ 11.  At the hearing, Plaintiff's counsel explained that this allocation correlates to the number of possible members in each class.  The Court is satisfied that the allocation of the settlement fund does not unfairly benefit one class over another.

The Court also notes that the Settlement provides for an incentive award to the Plaintiff in the amount of $10,000.  In this District, a $5,000 incentive award is presumptively reasonable.  In re Wal-Mart Stores, Inc. Wage and Hour Litig., No. 06-02069 SBA, 2011 WL 31266, at *4 (N.D. Cal. Jan. 5, 2011) (Armstrong, J.).  Large incentive awards may be a matter of concern because plaintiffs who receive large incentives may be "tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard," and become "more concerned with maximizing those incentives than with judging the adequacy of the settlement as it applies to class members at large."  Staton v. Boeing Co., 327 F.3d 928, 977 (9th Cir. 2003).  However, since the final amount of the incentive award is a matter of the Court's discretion, the Court finds that the generous incentive award authorized by the Settlement

1    does not necessarily render the settlement unfair or unreasonable.  See Harris, 2011 WL

2    1627973, at *9.[5]

3                    **4.       Range of Possible Approval**

4            Lastly, the Court must consider whether the Settlement falls within the range of

5    possible approval.  To determine whether a settlement "falls within the range of possible

6    approval." a court must focus on "substantive fairness and adequacy," and "consider

7    plaintiffs' expected recovery balanced against the value of the settlement offer."  In re

8    Tableware Antitrust Litig., 484 F. Supp. 2d at 1080.  As discussed above, the settlement

9    amount preliminarily appears to be fair and adequate in light of the risks attendant to

10   further litigating this action.  Thus, for purposes of preliminary approval, the Court is

11   satisfied that the settlement is within the range of possible approval.  See In re Mego Fin.

12   Corp. Secs. Litig., 213 F.3d at 459.

13           **C.    APPOINTMENT OF CLASS REPRESENTATIVE AND CLASS COUNSEL**

14           Plaintiff seeks her appointment as Class Representative for the Settlement Class.

15   Plaintiff has prosecuted this action since its inception, and by all accounts, appears to be an

16   adequate class representative.  See Villegas Decl. ¶¶ 7-12, Dkt. 141-1.  Plaintiff is therefore

17   approved as the Class Representative for the Settlement Class.

18           In addition, Plaintiff seeks the appointment of their current counsel, Peter M. Hart of

19   the Law Offices of Peter M. Hart, Eric S. Honig of the Law Office of Eric Honig, Kenneth

20   H. Yoon of the Law Offices of Kenneth H. Yoon, and Larry W. Lee of Diversity Law

21   Group, as Class Counsel.  These attorneys have represented Plaintiffs since the inception of

22   the case and have submitted documentation regarding their prior experience as Class

23   Counsel in wage and hour cases.  Given their qualifications, the Court appoints these

24   attorneys as Class Counsel.  See Fed. R. Civ. P. 23(g).

25

26

27   _____

28       [5] The amount of the incentive award will be resolved in connection with the Fairness
     Hearing and is subject to reduction.

**D.    NOTICE**

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); 23(e)(1).  Generally, a class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  Churchill Village v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004); see Fed. R. Civ. P 23(c)(2)(B) (notice requirements for classes certified under Rule 23(b)(3)).

According to Plaintiff, the identity of class members will be ascertained from Defendants' payroll records.  Hart Decl. ¶ 23.  Thereafter, the Claims Administrator, CPT Group, Inc., will mail a Notice of the settlement to class members within thirty days of the date the Court preliminarily approves the settlement by First Class Mail.  Settlement ¶¶ 10b; 16.  The Claims Administrator will use a single skiptrace, computer or other search using the name, address and/or Social Security Number of the individual involved for undeliverable Class Notices.  Settlement ¶ 16.  This approach is sufficient to provide notice through the best practicable means available under the circumstances, and is reasonably calculated to provide notice to potential class members.  See Fed. R. Civ. P. 23(c)(2)(B); 23(e)(1).

As for its content, the Notice provides an explanation of the claims and the terms of the Settlement, the exclusion procedure and associated deadlines, the attorneys' fees to be paid and the individual members' estimated recovery under the settlement net of expenses. It also states that those who do not opt out will be bound by the Settlement. Notice at 4, VII.B.  The Notice is thus sufficient to meet the requirements of Rule 23(c)(2)(B).  See Wright, 259 F.R.D. at 475.[6]

---

[6] Pursuant to the Court's instruction at the hearing, Plaintiff submitted an amended version of the proposed Notice.  Dkt. 160.  The amended Notice is approved for dissemination to the class.  Id.

**III.    <u>CONCLUSION</u>**

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.      Plaintiff's Motion for Preliminary Approval of Class Action Settlement is GRANTED.

2.      All defined terms in this Order shall have the same meaning as set forth in the Settlement executed by the parties.

3.      For settlement purposes only, pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), the Court conditionally certifies the following Settlement Class as follows:

(a)      "Pay Stub Settlement Class Members" shall mean any and all current and former employees employed by Defendants in California during any period that they worked for Defendants between December 17, 2004 and June 30, 2009 who were designated as non-exempt employees during the same time period.

(b)      "Vacation Days Settlement Class Members" shall mean any and all current and former employees employed by Defendants in California during any period that they worked for Defendants between December 17, 2004 and March 31, 2011 who were designated as non-exempt employees during the same time period.

Pay Stub Settlement Class Members and Vacation Day Settlement Class Members shall be jointly referred to as "Class Members" or "Settlement Class Members."

4.      Pursuant to Federal Rule of Civil Procedure 23(g), Peter M. Hart, Esq. of the Law Offices of Peter M. Hart, Eric S. Honig, Esq. of the Law Office of Eric Honig, Kenneth H. Yoon, Esq. of the Law Offices of Kenneth H. Yoon, and Larry W. Lee of Diversity Law Group are APPOINTED as Class Counsel for settlement purposes only.

5.      Nicole Villegas is APPOINTED as Class Representative for the Settlement Class for settlement purposes only.

6.      A Final Approval and Fairness Hearing shall take place on **January 15, 2013 at 1:00 p.m.** in Courtroom 1 of the United States District Courthouse, Northern District of California, Oakland Division, 1301 Clay St., Fourth Fl., Oakland, CA  94612.   The matter of Class Counsel's motion for an award of attorneys' fees and Plaintiff's request for an incentive award also will be considered at the hearing.

7.      The form of Class Notice, as amended and lodged with the Court on November 21, 2011, Dkt. 160, is hereby APPROVED.  No later than ten (10) calendar days after the entry of this Order, Defendants shall provide the Claims Administrator with each Class Member's name, last known address, social security number, and time period in the Settlement Class.  No later than thirty (30) calendar days after this Order, the Claims Administrator will send via first class mail the documents constituting the Notice Packet appended to the Agreement as Exhibits 1 (as amended) and 2 to each Class Member by first-class mail, postage prepaid.

8.      The Court hereby APPROVES the proposed Claim Period Deadline of sixty (60) calendar days from the initial mailing of the Notice Packet.

9.      The Court hereby APPROVES the proposed procedure for opting out of the Settlement Class.  The Opt-Out Request must (a) be in writing; (b) must identify this settlement and state that the Class Member is requesting exclusion from the Settlement (i.e., "I request exclusion from the Villegas v. JPMorgan Settlement"); (c) contain the Class Member's full name, address, telephone number and your last four digits of their social security number; (d) must be mailed to the Claims Administrator at the address set forth in the Notice; and (e) must be postmarked no later than the Class Period Deadline, sixty (60) calendar days from the initial mailing of the Notice Packet.  The date of the postmark on the return-mailing envelope shall be the exclusive means used to determine whether a request for exclusion has been timely submitted.  Any member of the Class who requests exclusion from the Settlement will not be entitled to any share of the settlement and will not be bound by the Agreement or have any right to object, appeal or comment thereon. Members of the Class who fail to submit a valid and timely request for exclusion shall be

bound by all terms of the Agreement and the Order and Final Judgment, regardless of whether they otherwise have requested exclusion from the Settlement.

10.     To object, a Settlement Class Member shall inform Class Counsel in writing of his or her objection to the Settlement and/or request to be heard at the Final Approval and Fairness Hearing by following the procedures set forth in the Notice Packet, including the requirement that he or she timely send a notice of intent to object or appear by first-class mail, postage prepaid, to Class Counsel.  To be considered timely, the notice must be filed no later than the Class Period Deadline of sixty (60) calendar days from the initial mailing of the Notice Packet and be served on Class Counsel and Defendants' Counsel. The notice must set forth any and all objections to this Agreement and include any supporting papers and arguments.  Any person or entity who fails to submit such a timely written notice shall be barred from making any statement objecting to this Agreement, including at said hearing, and shall forever waive his or her objection, except by special permission of the Court.  The Court will not consider any objector's request to be heard at the Fairness Hearing unless the objector has timely submitted an objection in accordance with the Notice Packet.

11.     Plaintiff shall file her motion for final approval, which shall include her response to any timely objections, as well as her motion for attorneys' fees, at least thirty-five days (35) prior to the Fairness Hearing.

12.     This Order terminates Docket 157 and 162.

IT IS SO ORDERED.

Dated:  August 8, 2012

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge